IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RAY BRITTAIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-565-AMG |
| ) | |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Ray Brittain ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues (Docs. 8, 15).[2] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 11, 12). Based

---

[1] Carolyn Colvin became the Acting Commissioner of the Social Security Administration on November 30, 2024, and is therefore substituted in place of Martin O'Malley as Defendant in this matter, pursuant to Federal Rule of Civil Procedure 25(d).

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

on the Court's review of the record and issues presented, the Court **AFFIRMS** the Commissioner's decision.

## I. Procedural History

Plaintiff filed applications for DIB and SSI on April 19, 2022, alleging a disability onset date of September 25, 2021. (AR, at 235-39, 240-49). The SSA denied the applications initially and on reconsideration. (*Id.* at 59, 60, 61-68, 69-76, 77, 78-87, 88, 89-98). An administrative hearing was held on June 29, 2023. (*Id.* at 38-58). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id.* at 20-32). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 6-11). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## II. The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence from an acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a

medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. §§ 404.1521, 416.921; *see id.* §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's

---

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the

4

Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "[a]n agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

### III.   Administrative Decision

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 25, 2021, the alleged disability onset date. (AR, at 25). At Step Two, the ALJ found Plaintiff had the following severe impairments: left shoulder injury status post arthroscopic repair and disorders of the spine. (*Id.*) At Step Three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 27). The ALJ then determined Plaintiff had the residual functional capacity RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb, but can occasionally climb ladders, ropes, and scaffolds.  The claimant can frequently balance, stoop, kneel, crouch, and crawl.  The claimant can occasionally reach with the left upper extremity, which is the non-dominant extremity.  The claimant must avoid a moderate exposure to hazardous machinery and unprotected heights.

(*Id.* at 28). At Step Four, the ALJ concluded Plaintiff could not perform his past relevant work. (*Id.* at 30). Then, at Step Five, the ALJ determined that when considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as marker, mail clerk, and housekeeper. (*Id.* at 31). Thus, the ALJ found Plaintiff had not been under a disability since September 25, 2021, through the date of the decision. (*Id.* at 31-32).

**IV.     Issue Presented for Judicial Review**

Plaintiff contends the ALJ erred by failing to account for his mild mental limitations in the RFC and/or failing to discuss why he chose not to do so. (Doc. 8, at 7-13). In response, the Commissioner argues that the ALJ is not required to include mild mental limitations in the RFC and that the decision includes adequate discussion on the ALJ's reasoning in excluding them. (Doc. 15, at 6-16).

**V.      The ALJ Properly Considered Plaintiff's Mild Mental Limitations.**

At Step Two of the sequential evaluation process, the ALJ acknowledged Plaintiff's non-severe impairments of depression and anxiety. (AR, at 26). In considering the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders (the paragraph B criteria), the ALJ relied on Plaintiff's subjective reports as well as a consultative examination performed by Dr. Deanna Gattis. (*Id.* at 26-27) (citing *id.* at 321-23, 515-16). Dr. Gattis observed that Plaintiff had "an intact immediate and short-term memory," "was able to answer questions and was open" during the interview, had "goal directed thoughts and an adequate thought process," and exhibited adequate "concentration[] and working memory." (*Id.* at 26) (citing *id.* at 515-16). The ALJ determined Plaintiff had (1) no limitation in understanding, remembering, or applying information; (2) no limitation in interacting with others; (3) a mild limitation in concentrating, persisting, or maintaining pace; and (4) a mild limitation in adapting or managing oneself. (*Id.*) Accordingly, he found Plaintiff's anxiety and depression non-severe. (*Id.* at 26-27)

"[E]ven if the ALJ determines that a claimant's medically determinable mental impairments are "'not severe,' he must further consider and discuss them as part of his [RFC] analysis at step four." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013); *see also* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (explaining that in determining RFC, the ALJ will consider both severe and non-severe impairments). Plaintiff argues that the ALJ did not do so. (Doc. 8, at 8, 9, 11, 12). The Court disagrees.

After finding Plaintiff's depression and anxiety non-severe at Step Two, the ALJ recognized that a distinct mental RFC assessment was still required at Step Four, stating:

> The limitations identified in the "paragraph B" criteria are not a [RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(AR, at 27). Plaintiff's medical records did not include treatment from a mental health provider. Additionally, as the ALJ explained, Dr. Gattis's examination record did not include her medical opinion on Plaintiff's mental RFC. (*Id.* at 26-27, 30) (citing *id.* at 514-18). *See Staheli*, 84 F.4th at 906, n.2 ("[T]he current definition of a medical opinion requires 'a statement from a medical source' about both 'what [the claimant] can still do despite his impairment(s)' *and* 'whether he has one or more impairment-related limitations or restrictions in [specified] abilities.'") (quoting 20 C.F.R. § 404.1513(a)(2)). Therefore, the ALJ's review at Step Four and Plaintiff's arguments in his Opening Brief were primarily limited to Plaintiff's subjective reports, Dr. Gattis's examination, and records from medical physicians.

Plaintiff relies on only limited portions of the Dr. Gattis's examination, noting that she found his abstraction and judgment below average and that during the Montreal Cognitive Assessment, he "recalled none of the words he was asked to remember on Delayed Recall with no cue." (Doc. 8, at 10) (citing AR, at 516). Plaintiff ignores the majority of Dr. Gattis's examination record, including the portions the ALJ discussed at Step Two indicating Plaintiff had an intact immediate and short-term memory, as well as adequate thought process, concentration, and working memory. (AR, at 26). Dr. Gattis also indicated that "[w]hen asked about his chief mental health concerns, [Plaintiff] reported, '[N]othing. Doctor was giving me anxiety meds for something maybe four or five months ago into my surgery, but he has taken me off of that.'" (*Id*. at 514). When she inquired about his current symptoms, Plaintiff said that he was fine except for physical problems related to his arm. (*Id.*)

Plaintiff also relies on his prescription for anxiety medication, his previous report to a medical provider that he has "trouble relaxing, is irritable, annoyed, and has difficulty sitting still," and the same provider's indication that Plaintiff's moderate anxiety and depression were "unstable and progressing." (Doc. 8, at 10) (citing AR, at 453, 458). Plaintiff contends the "[r]ecords are replete with references to [] [him] having moderate depression and anxiety." (Doc. 8, at 10).

The sole medical appointment upon which Plaintiff relies occurred on September 15, 2021, during which Dr. Jay Vinnedge indeed noted that Plaintiff's moderate anxiety and depression were unstable and progressing. (AR, at 458). Plaintiff was not on any medication for these conditions at that time. (*Id.* at 455). Five days later, at his September

8

20, 2021, appointment, Dr. Vinnedge prescribed Cymbalta, with a plan to increase dosage over the following month. (*Id.* at 454). On November 4, 2021, Plaintiff reported that the medication improved his symptoms. (*Id.* at 441).

In his decision, the ALJ acknowledged Plaintiff's testimony that he takes medication for anxiety. (*Id.* at 28). The ALJ also discussed medical appointments in which Plaintiff appeared "in no acute distress," exhibited "normal behavior" and "appropriate insight," was alert and oriented, presented in a good mood with good affect, and exhibited an "intact recent and remote memory [and] an intact attention span and concentration." (*Id.* at 29) (citing *id.* at 381-83, 525-29). Further, the record is replete with similar reports during other medical appointments. (AR, at 379, 382, 413, 439, 442, 450-51, 528, 531-32, 534, 552-53).

The ALJ's analysis, including consideration of Plaintiff's subjective reports as well as the medical record pertaining to his mental impairments, is sufficient to support his decision to omit mental limitations from the RFC. "While the ALJ's findings might have benefitted from further explication, the ALJ's separate summary of Plaintiff's testimony and references to the medical evidence regarding Plaintiff's mental impairments – coupled with the explicit exclusion of mental limitations and restrictions in the RFC – shows the ALJ conducted an RFC assessment apart from his Step Two determination of non-severity." *Peck v. Kijakazi*, No. CIV-20-701-AMG, 2022 WL 757239, at *3 (W.D. Okla. March 11, 2022) (internal quotation marks and citation omitted) (citing *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (affirming ALJ's decision, where he "discussed evidence relating to [non-severe] depression and then pointedly omitted any limitation

9

associated with it from the RFC," while admitting the ALJ "could have been more explicit in tying the former discussion to the latter conclusion") (alterations incorporated)).  The RFC was based on the ALJ's "careful consideration of all the evidence" (AR, at 24), which includes not only Dr. Gattis's consultative examination at Step Two, (*id.* at 26-27), but the remainder of the record as well.  The Court holds that the ALJ conducted a sufficient mental RFC assessment separate from the non-severity determination made at Step Two and that this assessment was supported by the requisite substantial evidence.

## VI. Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **AFFIRMS** the Commissioner's decision.

**SO ORDERED** this 17th day of December 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE

10